# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| FRINGE BENEFIT GROUP INC. and § | | |
| FRINGE INSURANCE BENEFITS, INC., § | | |
| § | | |
| V. § | | A-18-CV-369-LY |
| § | | |
| FCE BENEFIT ADMINISTRATORS, § | | |
| INC. and CHRIS PORTER § | | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaims Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code (Dkt. No. 18); Defendants FCE Benefit Administrators, Inc., and Chris Porter's Response to Plaintiffs' Motion to Dismiss (Dkt. No. 19); and Plaintiffs' Reply (Dkt. No. 22). The District Court referred the above-motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. BACKGROUND

Fringe Benefit Group, Inc. and Fringe Insurance Benefits, Inc. (collectively, "Fringe") filed this Lanham Act lawsuit against FCE Benefit Administrators, Inc. and Chris Porter on May 2, 2018. (Dkt. No. 1). FCE and Porter filed an answer and a two-count counterclaim against Fringe. (Dkt. No. 16). In the present motion, Fringe moves to dismiss the two counterclaims—alleged business disparagement and defamation—under Chapter 27 of the Texas Civil Practice and Remedies Code, commonly known as the Texas Citizens Participation Act (the "TCPA").

Fringe and FCE are direct competitors in the marketing, sales, and administration of employee benefit plans throughout the United States. (Dkt. No. 16, ¶ 1). Fringe filed this lawsuit against FCE and Porter on May 2, 2018, after FCE and Porter allegedly sent false and misleading solicitation letters to Fringe's customers, and sought to misappropriate those customers. (Dkt. No. 1, ¶¶ 20-40). In their counterclaim, FCE and Porter contend that "[o]n or about May 3, 2018, Plaintiffs published a statement on their website regarding this pending litigation" that FCE and Porter contend contained disparaging false statements. (Dkt. No. 16 at 14 ¶¶ 9-16). The Litigation Statement on FBG's website blog states:

> **FBG Statement Regarding Recent Litigation With FCE Benefits**
> **May 03, 2018**
> **Written by: editor**
>
> Fringe Benefit Group, Inc. ('FBG'), an industry leader in the design, implementation, and administration of health and retirement plans for government contractors, has provided working Americans with valuable benefits for more than 30 years. As a result of FBG's business success, competitors will occasionally make false claims against FBG in an attempt to discredit the company or steal FBG's customers.
>
> In 2015, the U.S. District Court for the Western District of Texas ordered a competitor to stop deceptive marketing and copyright infringement against FBG. The judge found that the competitor violated the Lanham Act, Copyright Act, and engaged in unfair competition against FBG.
>
> Recently, FBG became aware that another competitor has engaged in a campaign to mislead FBG customers by distributing untruthful information about FBG. In response to this competitor's repeated attempts to discredit FBG and the services it provides to its customers, FBG has filed suit against FCE Benefits Administrators, Inc. ('FCE Benefits') and Chris Porter, the Senior Vice President of Sales and Marketing for FCE Benefits.
>
> FBG's CEO Travis West stated, "From time to time, a competitor will cross the line and attempt to malign our corporate reputation. We have been made aware that FCE Benefits is spreading untruthful information about us in the marketplace. We cannot and will not tolerate these unscrupulous business practices, which is why we have filed suit against them. We will aggressively defend our business against FCE Benefits' false claims and have taken legal action against FCE Benefits to protect our reputation and to comfort our customers, who have received untruthful information

2

from FCE Benefits. We are very proud of the services we provide to government contractors and the working Americans they employ. Thousands of working Americans are now able to access health insurance for themselves and their families – and build retirement savings accounts – as a result of the plans we offer. We believe that the court will compel FCE Benefits to stop its deceptive marketing practices, just as the court previously stopped another competitor."

Dkt. No. 18 at 4. FCE and Porter also complain that, at the end of the Litigation Statement, Plaintiffs provide a link to Plaintiffs' complaint in this lawsuit. (Dkt. No. 16, ¶ 14). It is clear from the counterclaim that the business disparagement and libel claims are based solely on what is contained in the Litigation Statement. In this motion, Fringe argues that the TCPA bars the two counterclaims and moves to dismiss them.

## II. ANALYSIS

### A. Applicability of TCPA in Federal Court

Plaintiffs acknowledge that in a prior case, *Rudkin v. Roger Beasley Imports, Inc.*, 2018 WL 212289 at *2 (W.D. Tex. Jan. 31, 2018), this Court held that TCPA does not apply in federal court. The issue remains unresolved in the Fifth Circuit.[1] *See Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) ("The applicability of state anti-SLAPP statutes, such as the TCPA, in federal court is an important and unresolved issue in this circuit."); *Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015) ("Because we determine that the TCPA by its own terms has not been shown to apply, we again pretermit the fundamental issue of its applicability in federal court."); *Diamond Consortium, Inc. v. Hammervold*, 733 F. App'x 151, 154 (5th Cir. 2018), *reh'g denied* (June 4, 2018) (finding TCPA inapplicable to the legal claims in issue without deciding it was applicable in federal court).

The Court finds no reason to deviate from its prior opinion in *Rudkin*, and thus holds in this case as well that the TCPA does not apply in federal court. As addressed in the next section,

---

[1]Roger Beasley appealed this Court's TCPA holding in *Rudkin*, but the appeal was dismissed before the Fifth Circuit addressed the merits.

3

however, the undersigned concludes that Defendants' counterclaims should nonetheless be dismissed.

B. **The Judicial Proceeding Privilege**

A federal court may *sua sponte* dismiss a claim for failure to state a claim as long as the party bringing the claim has notice and an opportunity to respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair"). In addition to contending that the counterclaims fail to meet the threshold requirements of the TCPA, Fringe also asserts in the motion to dismiss that it has a meritorious defense to the claims under the judicial proceedings privilege recognized by Texas law, and under the TCPA this is an independent basis for the Court to dismiss the claims. Dkt No. 18 at 11-13. Though FCE and Porter plainly had notice of the argument, as they responded to the motion, they did not address this specific argument. Regardless, the undersigned believes that it is appropriate to review the privilege argument not under the TCPA, but instead under the auspices of Rule 12. Because this motion has been referred to the undersigned for a report and recommendation, FCE and Porter will have an opportunity to be heard on the issue by filing objections. On its own motion, therefore, the Court will address whether the counterclaims should be dismissed under Rule 12(b)(6) for failure to state a claim because they are barred by Texas's judicial proceeding privilege.

The absolute privilege of parties and witnesses to participate in judicial proceedings without having to answer civil actions in damages for libel or slander is well established in Texas law. *See Belo & Co. v. Wren*, 63 Tex. 686 (1884), *Runge v. Franklin*, 72 Tex. 585, 10 S.W. 721 (1889). The Texas Supreme Court has stated that "[t]his privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including

4

statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *See James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). This immunity is absolute even if the statement is false and uttered or published with express malice. *Id.*

The privilege is not limited to libel claims. Most of the cases applying the judicial proceeding privilege involve defamation claims. But Texas courts have recognized that "the judicial communication privilege cannot be circumvented by disguising a claim under a different label." *Laub v. Pesikoff*, 979 S.W.2d 686, 690 (Tex. App.– Houston [1st Dist.] 1998, pet. denied). Thus, the privilege extends to any claim, even if not explicitly labeled "defamation," if the claim is advanced to circumvent the policy behind the privilege, that is, allowing citizens to make statements in judicial proceedings without fear of having to answer in damages. *Tulloch v. JPMorgan Chase & Co.*, 2006 WL 197009 (S.D. Tex. Jan.24, 2006)*; Bird v. W.C.W.*, 868 S.W.2d 767, 771–72 (Tex. 1994). "The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages." *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). Clearly, the policy behind the privilege applies to this sort of a claim. If applicable here, then, the judicial proceedings privilege would apply to both of the counterclaims.

Further, out-of-court statements fall within the scope of the privilege if the statements bear some relationship to pending or contemplated litigation. *See Bennett v. Computer Assocs. Intern., Inc.*, 932 S.W.2d 197, 201 (Tex. App.– Amarillo 1996, writ denied); *Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. App.– Dallas 1981, writ refd n.r.e.). Whether an out-of-court statement is related to a proposed or existing judicial proceeding is a question of law. *See Russell*, 620 S.W.2d at 870. When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial

5

proceeding." *Id.* All doubt should be resolved in favor of the communication's relation to the proceeding. *Id.; 5–State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 257 (Tex. App.– Fort Worth 2004, pet. denied).

In this case, the Litigation Statement directly relates to the litigation. The Litigation Statement is Fringe's press release regarding this case. It specifically discusses the allegations in the case and provides a link to the complaint. *See Dallas Independent School District v. Finlan*, 27 S.W.3d 220 (Tex. App.–Dallas 2000). In a 2004 case, Texas's Houston Court of Appeals explained that:

> [j]ust as the mere delivery of pleadings in pending litigation to the news media does not amount to publication outside of the judicial proceedings that would result in a waiver of the absolute privilege, a press release advising the media that a lawsuit has been filed, including a basic description of the allegations, does not amount to publication outside of the judicial proceedings resulting in a waiver of the absolute privilege.

*Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App. –Houston [1st Dist.] 2004, pet. denied). The Litigation Statement largely mirrors the complaint and adds no allegations or factual information not already contained in the complaint. The statements in the Litigation Statement are therefore related to this court proceeding and fall within the scope of the absolute privilege, and FCE and Porter's counterclaims for defamation and business disparagement should therefore be dismissed with prejudice.

### III. RECOMMENDATION

The undersigned **RECOMMENDS** that the district judge **GRANT** Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaims Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code (Dkt. No. 18) **IN PART** and **DISMISS** Defendants' counterclaims for

defamation and business disparagement **WITH PREJUDICE** as barred by the judicial proceedings privilege.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 21st day of December, 2018.

                                            ANDREW W. AUSTIN
                                            UNITED STATES MAGISTRATE JUDGE